# The Venango Central and Duck Creek Oil Company *versus* Lewis *et al.*

1. In a question which of two lines was a division line, a draft was shown containing evidence that one line had been made seven years before the other ; a mark on a tree on the line of same age as was indicated on the draft is but slight evidence that such was the line in the absence of other marks on the line.

2. The draft had been shown by one of the plaintiffs when selling the tract to a predecessor of the defendant: even if the line indicated on the draft as being that to which the defendant claimed had been as well marked as the plaintiff's line, it was a question for the jury.

October 18th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Venango county :* Of October and November Term 1869, No. 1.

This was an action of ejectment for a piece of land in Rockland township, containing about one acre, brought May 15th 1867 by William Lewis, Sterling Bonsall and Elihu Chadwick against The

Venango Central and Duck Creek Oil Company, Charles L. Stock and others.  The case was tried June 30th 1868, before Trunkey, P. J.  Both parties claimed under Chadwick, one of the plaintiffs.  The plaintiffs gave in evidence a deed dated July 25th 1866, from Chadwick to the other plaintiffs for four undivided fifth parts of a tract of land in Rockland township, beginning at a maple tree by Allegheny river; thence by lot 329 south 38 perches to a white oak, thence by lot 169 west 43½ perches to a post north 8 perches to a chestnut, thence by lot 166, conveyed by Chadwick to James Hanby, west 61 perches, and by a number of other courses and distances to a post, and thence by lot 359, conveyed by Chadwick to John E. Snyder, north 76 perches, &c., to a post on the bank of the same river, "near two hemlocks originally marked as witnesses to said corner," thence up the river to the beginning, containing 79.9 acres, "being allotment No. 360 of subdivision of Bingham lands," &c.  The defendants gave in evidence a deed dated September 1st 1860, from Chadwick to John E. Snyder, for a tract beginning at an elm on the Allegheny river, thence by lots 358, 324, &c., by various courses and distances to a black oak, thence east 47.5 perches to a post, thence "partly by James Hanby's lot No. 166 and partly by Chadwick's lot 360 north 107 perches to a post" on the river, and down the river to the beginning, containing 93.1 acres, "being allotment No. 359 of the sub-division of the Bingham lands."  Also deed dated September 13th 1860, from Snyder to —— Eisenbise, for 50 acres 42 perches, part of the land conveyed by Chadwick to Snyder; described as being bounded by E. Chadwick and J. Hanby, by Tucker's heirs and J. and J. Hanby, and by J. E. Snyder.  Eisenbise conveyed, December 12th 1864, to George Over by the same description, and Over, on the 12th of July 1865, to the oil company.  The other defendants were the tenants of the company.

The line in dispute is that which in the deed from Chadwick to the other plaintiffs is described as running from a post at the end of the line of lot No. 166, conveyed to James Hanby by lot No. 359, conveyed by Chadwick to Snyder, "north 76 perches to a post on the bank of the river, near two hemlocks originally marked as witnesses," &c.  The whole line, as described in Chadwick's deed to Snyder, begins at a post distant 47.5 perches from a black oak, "thence partly by James Hanby's lot No. 166 and partly by Chadwick's lot 360 north 107 perches to a post on the river," &c.

G. Bowman, a surveyor, testified for defendants that in the spring of 1865 he went to a black oak, a corner of Snyder's property, and ran 47.5 east and found no post, but found a maple marked as witness to the corner; he then reversed his course, ran to the river and along the river about 80 perches; found two

[Venango Central and Duck Creek Oil Co. v. Lewis.]

hemlock stumps marked as witnesses to the corner, but found no corner.

In the following fall he found the Snyder corner as in the spring, and ran through north to the river; he struck a poplar tree which had marks on it, he came out east of the eastern hemlock stump. In the spring of 1867 he went to a white-oak, the south-west corner of the Hanby tract, and blocked a witness tree, which counted 31 years; he started at the white-oak, and found several marked trees, apparently two lines diverging from that point; when he got to Snyder's now the defendant's corner, he was 11 feet east of the corner; when he came to the south-west corner of the plaintiffs, and north-west corner of Hanby, he found two witness trees with ancient marks and a chestnut tree blazed as a line tree between the plaintiffs and Hanby; the witness trees indicated a corner 14 feet east of the chestnut, he ran by the poplar as before, the true course of the line was due north, found no marked trees, and came out east of the eastern hemlock stump. He ran again in June with C. Mosier, another surveyor, and with the same result; at this time there were wells there, and he came out 18 inches east of the wells. He testified that a straight line north through the poplar, leaves the wells on the west, a line from the white-oak through the poplar leaves them on the west, the poplar was the only marked tree he found on his line; from the white-oak to Hanby's corner the line was between 70 and 80 perches; from this corner to the hemlocks 79.8 perches; the poplar blocked 31 years. The line run by Brashear, a surveyor appointed by the court, was a well-marked line, but not very straight; the marks were 23 years old. The testimony of Mosier, the other surveyor, corresponded with Bowman's.

The plaintiff gave rebutting evidence by Brashear, that in October 1867, he went to the north-west corner of Hanby's land, where the two lines cover each other, and thence to Hanby's south-west corner, the white-oak, he ran $2\frac{1}{2}°$ east of north to the river, found several marked trees; at the brow of the hill he found two marked trees, and ran between them; found no trees till he came to a poplar near the river, there was a hemlock stump 4.8 feet east of the point he struck at the river; there were two hemlock stumps west of that; the line he found was 23 years old; to start at the white-oak and run at right-angles with Hanby's line, would correspond with the line he found; there are trees on the other line by the poplar not marked; there were three wells east of the line he ran and west of that run by Bowman, the lines of the lower end of Snyder's lot were 23 years old; a tree 41 years old was blocked as Hanby's line.

Snyder, who owned the Hanby tract and had left it about 1853, testified that there were two marked hemlocks at the river at the commencement of the line marked; the line was well marked; when

12 P. F. Smith—25

he sold he told the purchaser that the line was west of the poplar, the line is 23 years old. The testimony of other surveyors who ran the line corresponded with Brashear's. There was evidence conflicting with Snyder's.

The defendant's points were:—

"1. That the Chadwick draft, dated October 26th 1864, is evidence that the division between the allotments 359 and 360 was established as early as 1835 or 1836, and there is no competent evidence in the case to show that it has been changed.

"2. That the division line between allotments 359 and 360, as established in 1835 or 1836, is the line called for by Chadwick's deed to Snyder, and if the jury believe that the said division line was run on the ground in 1835 or 1836 by Mr. Chadwick, and that it corresponded with the dotted line through the poplar tree as shown on the plot of R. A. Brashear, their verdict should be for defendants."

The court charged:—

"The defendants having shown title under E. Chadwick, one of the plaintiffs, no question is raised as to the validity of plaintiffs' title under the deeds and acts of assembly given in evidence. Both parties trace back to the same point, and, when this unquestionably appears, it is unnecessary to go further.

"On September 1st 1860, Chadwick conveyed a lot of land to John E. Snyder, and by divers conveyances this land has become vested in the defendants, or some of them. The question now is, whether or not the land in controversy is embraced in this deed by Chadwick to Snyder. The defendants are entitled to the land if the survey includes it, which was referred to in the description in the Snyder deed. If not so included the land belongs to Chadwick and those to whom he has conveyed an undivided interest.

"Lines marked upon the ground, recognised by the grantor and grantee at the time of sale and purchase or conveyance govern and control courses and distances as mentioned in the deed. Such lines or natural boundaries, when determined or designated, bind the parties. When the deed calls for a natural boundary, and it can be ascertained where such boundary is, the land is confined within and extends to the same, although the courses and distances and quantity stated in the deed may not lead to or correspond therewith. When there are no lines marked upon the ground, or no natural boundaries that can be determined, then the courses and distances stated in the deed control. If the deed calls for certain marks, such as a tree, or a stone, which cannot be found, or its former locality determined from the evidence, it is the same as if none were marked.

"In this case the plaintiffs and defendants claim that a line was run and marked before the conveyance by Chadwick to Snyder; one party claiming that the line about 23 years old, shown on the

diagram made by R. A. Brashear, by the black line, is the only line there; the other claiming there are two lines,—the one referred to and another shown on the diagram by the red dotted line. Does the evidence show that there are two lines upon the ground, and that two were run and marked prior to the conveyance to Snyder? This is an important question, for if two, you will have to determine which is the true line; if one only, the question as to the line is settled.

" The deed by Chadwick to Snyder gives certain points, courses and distances, and recites that the *land* is for allotment No. 359 in the division of the Bingham lands. In October 1864, Mr. Chadwick gave to' Snyder a plot with remarks added, in which he states the plot is of the land conveyed to Snyder on September 1st 1860, copied from his (Chadwick's) map of re-surveys which he made for the Bingham estate in 1835 or 1836. This is evidence tending to show that the division No. 359, which was conveyed to Snyder, was surveyed at that time, which is about 31 years ago. Along with this there is evidence relative to the age of marks on the white oak and poplar. [Does the weight of the evidence satisfy you that there was a line run in 1835 or 1836, and if so, that the line from the white oak, through the poplar, as shown by the red line on the diagram, is the one? To answer this question you must consider all the evidence in relation to it. If you find there was a survey at that time, then you will find as to the other point, whether the line running through the poplar tree is the one. In case you find that there is such a line, represented by the red line on the diagram, and also another line of a later date, as shown by the black line, then you must determine as before stated which is the true line.] [The later line, which is alleged to be well marked and defined, and about 23 years old, is claimed by the plaintiffs to be the true one. Do you find from the evidence that it is such a line as alleged? If so, does the evidence satisfy you that this is the line recognised by both Chadwick and Snyder, at the time of the sale and conveyance to Snyder? If there was such a line, then was that the one recognised as the true line by Snyder when he purchased, being the only one known to him and claimed by him? There has been little or no question raised that there is such a line; but the defendants contend that it was not the line of division between lots No. 359 and 360 of the Bingham lands. If you find there was a line through the poplar, as we have called to your attention, then the plaintiffs must satisfy you that the later line is the one both parties intended.] Evidence has been given upon this point, and from it you find the fact. If the evidence is not sufficient to make it out you will not presume it. Take all the evidence in relation thereto, and determine from that."

To the defendants' first point the court answered :—

[Venango Central and Duck Creek Oil Co. *v.* Lewis.]

" This point as made is answered in the negative, qualified as stated in the charge."

The verdict was for the plaintiffs, and the court overruled a motion for a new trial. The defendants took a writ of error, and assigned for error the answer to their first point; that " the charge as a whole was calculated to mislead the jury; that it was so expressed as to conceal from the jury the importance and legal effect of the fact that the division line was established in 1836, while it gave undue importance to the marking of a line upon the ground seven years subsequently, it not being shown whether the marking was done without authority;" the parts of the charge in brackets, and the overruling the motion for a new trial.

It appeared from the paper-book that on the trial drafts were given in evidence indicating the respective lines and their marks, &c. Copies of these drafts were not furnished to the reporter.

*C. Heydrick* and *A. B. McCalmont,* for plaintiffs in error.— Marks to prevail over courses and distances must be contemporaneous with the establishment of the line: Rifener *v.* Bowman, 3 P. F. Smith 318; Hall *v.* Powel, 4 S. & R. 456; Walker *v.* Smith, 2 Barr 44; Boynton *v.* Urian, 5 P. F. Smith 151. Where a charge is inadequate to the case, there will be a reversal: Gregg Township *v.* Jamison, 5 P. F. Smith 474; Railroad *v.* Chenewith, 2 Id. 382; Garrett *v.* Gonter, 6 Wright 146. There was no evidence that there was a consentable line, and the question should not have been submitted to the jury: Kerr *v.* Wright, 1 Wright 198; Kirkpatrick *v.* Vanhorn, 8 Casey 131.

*Myers & Kinnear, McCalmont & Osborne, C. T. Bonsall* and *D. W. Sellers,* for defendants in error.

The opinion of the court was delivered, July 7th 1870, by

WILLIAMS, J.—The whole controversy in this case was in reference to the boundary line between the plaintiffs' and defendants' land. The plaintiffs in error, who were defendants below, are the owners of the eastern portion of allotment No. 359, and the defendants in error—the plaintiffs below—are the owners of allotment No. 360 of the sub-division of the Bingham lands, lying east of the Allegheny river, in Rockland township. By deed, dated June 7th 1864, Elihu Chadwick became the owner in fee simple of both allotments; and, on the 1st of September 1860, he conveyed No. 359 to Snyder, who divided it into two parts, by a line running north and south, and conveyed the eastern part to Eisenbise, under whom the defendants below claimed title. On the 25th of July 1866, he conveyed four equal undivided fifth parts of allotment No. 360 to his co-plaintiffs below, William Lewis and

Sterling Bonsall, as tenants in common. They claimed that the division line between the allotments was the one marked on the ground, running from the south-west corner of No. 360, north 76 perches, and terminating between two hemlock stumps, on the bank of the Allegheny river, The defendants below, on the other hand, contended that a line running through a poplar tree, about 20 feet east of that claimed by the plaintiffs, was the original sub-division boundary, and the true line between the allotments. The line claimed by the plaintiffs, as shown by the evidence, is a well-marked line, twenty-three years old, on which there are from twelve to fifteen marked trees. There are no marks on the line claimed by the defendants, except those on the poplar, which are thirty-one years old, and this line terminates on the Allegheny river, east of the two hemlock stumps marked as witnesses. In support of this line, the defendants gave in evidence a draft furnished by Chadwick to Snyder, on the 29th of October 1864, of allotment No. 359, which he had conveyed to him by deed dated the 18th of September 1860, purporting to be copied from his map of re-surveys, which he made for the Bingham estate, in 1835–36. This draft shows the sub-division of No. 359, by a line running north and south, dividing it into two parts, the eastern, claimed by the defendants, containing 50 acres and 42 perches, and the western, 42 acres and 134 perches; and this sub-division, as appears by the draft, was made on the 7th of September 1860. The defendants also gave evidence tending to show that a line running from a white oak, at the south-west corner of Hanby's land, being allotment No. 166, due north to the point which he claimed as the north-west corner of his tract, near a chestnut, would, if continued, run through the poplar, which they claimed as their line, and that the marks on the witness trees, to the white oak, were of the same age with those on the poplar. To rebut this evidence, the plaintiffs showed by the testimony of three surveyors, that the only line marked on the ground was the line claimed by the plaintiffs; and that this line, if extended, would cross Hanby's east and west line at right angles, and strike the white oak at the south-west corner of his tract. They also showed, by the testimony of one or more of the surveyors, that Hanby's line was forty-one years old, and that the lower line of the tract conveyed to Snyder—allotment No. 359—was twenty-three years old, corresponding in date with the disputed line claimed by the plaintiffs; that there were trees on the line claimed by the defendants, of sufficient age and size to have been marked, if the line had been run on the ground, and that there was something like an old path by the poplar, and one of the blazed openings in the poplar indicated it. Snyder, under whom the defendants claimed title, testified that Chadwick showed him the line in 1860, and that he knew it five or six years before he bought, and that the

[Venango Central and Duck Creek Oil Co. *v.* Lewis.]

line claimed by the plaintiffs was the line. But the defendants showed, by the testimony of two witnesses, if believed, that in 1861 or 1862, he pointed out the line by the poplar, and said that it was the line.

It is clear that, under the evidence, it was the province of the jury to determine which of the alleged lines was the division or boundary line between the plaintiffs' and defendants' land, and this question was left to their determination by the learned judge before whom the cause was tried. He instructed the jury, in substance, that if they should find, from the evidence, that there was only one line run and marked on the ground prior to the conveyance to Snyder, the question as to the line is settled. But if they should find that there are two lines on the ground, one run in 1835 or 1836, through the poplar, and another at a later date, well marked and defined, and about twenty-three years old, then they would have to determine which was the true line, and he submitted to the jury the question, whether the evidence satisfied them that there was such a line as the one claimed by the plaintiffs, and, if so, whether it was the line recognised by both Chadwick and Snyder at the time of the sale and conveyance to Snyder, and closed by saying : If you find there was a line through the poplar, as we have called to your attention, then the plaintiffs must satisfy you that the later line is the one both parties intended. Evidence has been given on this point, and from it you find the fact. If the evidence is not sufficient to make it out, you will not presume it. Take all the evidence in relation thereto, and determine from that. The defendants below—the plaintiffs here—complain of these instructions, and of the refusal of the court to charge as requested in their 1st point, that the Chadwick draft, dated October 29th 1864, is evidence that the division between allotments 359 and 360 was established as early as 1835 or 1836, and there is no competent evidence in the case to show that it has been changed.

The first three assignments of error, it is admitted, raise but one question, and may, therefore, be considered together. The substance and burden of the complaint, which they are intended to embrace, is, that the charge, as a whole, was calculated to mislead the jury—that it was so expressed as to conceal from them the importance and legal effect of the fact that the division line was established in 1836, while it gave undue importance to the line run about the year 1843, and assumed throughout that it was proper for the jury to infer that this line must be eight years older than the marks upon it. In other words, the court permitted and encouraged the jury, as the plaintiffs in error allege, to presume that a line was run thirty-one years ago, because it is proved to have been marked twenty-three years ago. Is this objection to the charge well founded ? It assumes that the

[Venango Central and Duck Creek Oil Co. *v.* Lewis.]

division line between the tracts was actually run and marked on the ground in 1835 or 1836, of which there is not a particle of direct and positive evidence. If no such line was in point of fact run and marked on the ground, then this complaint of the charge is utterly groundless. The only evidence tending to show that such a line was run, is the memorandum on the draft furnished by Chadwick to Snyder, in 1864, which is in these words: "Copied from my map of re-surveys, which I made for the Bingham estate, in 1835 and 1836," and the marks upon the poplar tree of a corresponding date. This draft shows on its face the lines of the survey made on the 7th of September, 1860, when allotment No. 359 was sub-divided, and could not, therefore, have been an exact transcript from Chadwick's map of re-surveys. But, admitting it to be a literal and exact copy, it does not follow that the line claimed by defendants below was actually run and marked on the ground when the re-surveys were made. There is nothing on the draft showing that the line was run and marked on the ground at the date of the re-surveys; and the marks on the poplar, though they are of a corresponding date, are but slight evidence of the running of such a line in the absence of any other marks or monuments, when, as the evidence shows, there were other trees standing on or near the alleged line of sufficient size to have been marked as line trees. If the line was run when the re-surveys were made, why was the poplar the only marked tree on the line, and why was there not some evidence, outside of the draft and the marks on the poplar, that it was actually run? But the weight of the evidence was a matter exclusively for the jury, and the court submitted with great fairness to their determination the question as to the existence of the alleged line.

Referring to the draft and memorandum thereon, the court said to the jury, this is evidence tending to show that the division No. 359, which was conveyed to Snyder, was surveyed at that time, which is about thirty-one years ago. Along with this, there is evidence of the age of the marks on the white oak and poplar. Does the weight of the evidence satisfy you that there was a line run in 1835 or 1836, and, if so, that the line from the white oak through the poplar is the one? To answer this question, you must consider all the evidence in relation to it. As the court did not express or intimate any opinion upon the weight of the evidence, the charge, in this respect, was as favorable as the plaintiffs in error had any right to ask or expect; for it left the jury to find, upon very slight evidence, whether the line claimed by them through the poplar had been actually run and marked on the ground. Even if it had been as well marked as the other, the court must have submitted to the jury, as it did, the question, which was the true line? There is nothing on the face of the

[Venango Central and Duck Creek Oil Co. *v.* Lewis.]

deed, or draft, which would enable the court to determine, as matter of law, which was the line intended by the parties; and if both lines had been equally well marked, the court would not have been warranted in giving any instructions more favorable to the defendants below than it did, in saying to the jury, that if they found there was a line through the poplar, then the plaintiffs must satisfy them that the later line was the one both parties intended at the time of the sale and conveyance by Chadwick to Snyder; and if the evidence was not sufficient to make it out, they would not presume it. Nor did the court fall into the error of assuming, as alleged, that it was proper for the jury to infer that the line claimed by the plaintiffs must be eight years older than the marks upon it, or of permitting and encouraging them to presume that a line was run thirty-one years ago, because it was proved to have been marked twenty-three years ago. There was no dispute or doubt as to the time when the line, claimed by the plaintiffs below, was run and marked on the ground. Its date was shown by the marks themselves, and the plaintiffs below did not allege that it was run in 1835 or 1836. On the contrary, they denied that any line between these tracts was run and marked on the ground when the re-surveys were made, and insisted that the line claimed by them, about twenty-three years old, was the only line which had been run and marked as the sub-division boundary between the two tracts or allotments. Whether the line claimed by the defendants, through the poplar, had been run and marked as the division line between the tracts, was, therefore, a material question for the determination of the jury, for if no such line was run, then the line claimed by the plaintiffs was the only line run and marked on the ground. But if both lines were run and marked, then it was for the jury to determine which was the true line, and, as we have seen, these questions were fairly submitted to their finding by the court.

The 4th assignment is founded on an entire misapprehension of the charge. The court did not leave to the jury the question whether there was a consentable line between the sub-divisions. But if the evidence satisfied the jury that there were two lines on the ground, and that they were run and marked prior to the conveyance to Snyder, then the court left to the jury to find which of the lines was the one intended and recognised by the parties at the time of the sale and conveyance by Chadwick to Snyder, with the instruction that the plaintiffs must satisfy them that the later line is the one both parties intended, and if the evidence was not sufficient to make it out, they would not presume it.

The refusal of the court to grant a new trial, being matter of discretion, is not the subject of review here, and cannot be assigned as error.

Judgment affirmed.